IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

AMERICAN FAMILY MUTUAL INSURANCE COMPANY, S.I., and
NICHOLAS AND ELIZABETH VAN ENGEN,

    Plaintiffs,

v.

ELECTROLUX HOME PRODUCTS, INC.,

    Defendant.

---

## COMPLAINT

---

Plaintiffs American Family Mutual Insurance Company and Nicholas and Elizabeth Van Engen, for their complaint against the above-named defendant, state:

### PARTIES

1. Plaintiff American Family Mutual Insurance Company, S.I. ("American Family") is a domestic company licensed to sell insurance in the State of Wisconsin. Its place of incorporation is the State of Wisconsin. Its principal place of business where its officers direct, control, and coordinate the corporation's activities is located at 6000 American Parkway, Madison, Wisconsin.

2. Plaintiffs Nicholas and Elizabeth Van Engen ("collectively "Van Engens") are adult residents of Wisconsin who resides at 1510 Indigo Drive, Oshkosh, Wisconsin.

3. Defendant Electrolux Home Products, Inc. ("Electrolux") is a foreign business incorporated in the State of Delaware. Its principal place of business is located at 10200 David Taylor

Drive, Charlotte, North Carolina. Its registered agent for service of process is The Corporation Trust Company, Corporation Trust Center, 1209 Orange Street, Wilmington, Delaware 19801.

**JURISDICTION AND VENUE**

4. The amount in controversy is over $75,000.00.

5. Electrolux's principal place of business is located in North Carolina. North Carolina is the place where Electrolux's officers direct, control, and coordinate the corporation's activities.

6. This court has subject matter jurisdiction over this matter under 28 U.S.C. §1332 because all plaintiffs are citizens of a state (Wisconsin) diverse from the state in which the defendant is incorporated (Delaware) and the defendant's principal place of business (North Carolina).

7. This court has personal jurisdiction over the defendant because it has purposefully availed itself to the benefit of the laws of this judicial district by regularly transacting and/or conducting business in the State of Wisconsin. Electrolux conducts a substantial amount of business in the State of Wisconsin.

8. Venue is proper pursuant to 28 U.S.C. §1391(b)(2) because the events giving rise to this claim, and the property involved, were located in the counties of Milwaukee, Racine and Winnebago, Wisconsin.

**FACTS**

*The Electrolux dryer design*

9. At all times relevant hereto, Electrolux was in the business of designing, engineering, manufacturing, introducing into the stream of commerce and selling clothes dryers.

10. The dryers that are the subject of this lawsuit ("the subject dryers") were Electrolux dryers that incorporated a design commonly referred to as a ball hitch style dryer. This design includes a dryer drum that rotates on a fixed axis and included a void space located directly behind the drum. In this void space is the heater pan.

11. The subject dryers included a blower motor which is located in a blower housing, and a lint trap duct located on the front of the dryer cabinet.

12. Prior to 1995, Electrolux's ball hitch dryers for sale in the United States had blower housings and trap ducts made from steel.

13. In 1995-96, Electrolux redesigned its ball hitch dryers. During this process, it changed the composition of the blower housing and trap duct material from steel to non-fire retardant combustible plastic.

14. During the redesign process, Electrolux conducted testing through a process which included, but was not limited to, Design Verification Requests.

15. During the redesign process, Electrolux experienced a ball hitch test dryer ignite a fire internal to the dryer cabinet and which spread to the combustible plastic trap duct.

16. Testing that Electrolux conducted in 1998 documented that a fire starting internal to the dryer cabinet of its ball hitch dryers could spread to the blower housing and trap duct, both of which Electrolux manufactured with non-fire retardant combustible plastic.

17. The testing Electrolux conducted in 1998 documented that once ignited, the plastics of the dryer's blow housing and trap duct could melt and spread outside the dryer cabinet.

18. Before it manufactured the subject dryers, Electrolux received complaints from consumers of fires internal to the dryer cabinet of its ball hitch designed dryers.

19. Before it manufactured the subject dryers, Electrolux received multiple warranty claims for fires for its ball hitch clothes dryers which occurred during the warranty period of one year from sale.

20. In 2002, after receiving notice of multiple claims that its ball-hitch clothes dryers were defective in its design and had caused fires internal to the dryer cabinet, Electrolux retained an independent engineer to investigate the ability of lint to ignite within its clothes dryers.

21. In 2005, an Electrolux product engineer acknowledged during an investigation by the Japanese government that dryer drum lint could travel out of the back of the dryer drum and ignite either the contents of the drum or accumulated lint in the dryer's lint screen in the ball-hitch clothes dryer.

22. In 2005, the Japanese government forced a recall on the ball-hitch clothes dryer manufactured by Electrolux.

23. At all times relevant the United States had in full force and effect 15 U.S.C. § 2064 which provided that when a manufacturer has reason to know its product does not meet safety standards, contains a defect, or creates an unreasonable risk of death or injury, it must inform the Consumer Product Safety Commission.

24. At no time on or before the date of the fires that are the subject of this lawsuit, did Electrolux inform the Consumer Product Safety Commission of the fire risks associated with its ball hitch clothes dryers.

25. Despite the knowledge as pled herein relating to the safety and fire risks associated with its ball hitch clothes dryers, Electrolux has never issued a recall in the United States of the ball-hitch clothes dryer it manufactured for sale in the State of Wisconsin.

26. At no time on or before the date of the fires that are the subject of this lawsuit, did Electrolux inform the owners of the dryers of the safety and fire risks associated with the subject dryers.

27. Before it manufactured the subject dryers, Electrolux, tested the ball hitch for use in a home with various restricted external vent conditions which included, but was not limited to, a 100% vent restriction condition.

28. At all relevant times, the subject dryers were installed in a manner reasonably expected and foreseeable to Electrolux.

29. At all times relevant, the subject dryers were used for the intended purpose of drying clothing, and were used in a manner reasonably foreseeable to Electrolux.

*The Curtis fire*

30. Adam Curtis ("Curtis") purchased a ball hitch clothes dryer, model GLGR1042FS0, that was designed, engineered, manufactured, and introduced into the stream of commerce by Electrolux ("the Curtis dryer").

31. On February 3, 2018, the Curtis dryer spontaneously combusted, causing a fire in Curtis' home, located at 5917 W. Michigan Street, Wauwatosa, Wisconsin.

32. The fire caused property damage to Curtis' home and his personal property in the home. The actual cash value of the damages is $117,662.75.

33. At the time of the fire, American Family had issued to Curtis, and there was in full force and effect, a policy of insurance that insured Curtis against the damages caused by the fire. As required by, and pursuant to its policy, American Family paid to, or on behalf of, Curtis for the damages caused by the fire, less any applicable deductible, and is subrogated to the rights of Curtis to the extent of its payments.

### The Flones fire

34. Paul and Christine Flones ("the Floneses") purchased a ball hitch clothes dryer, model GLEQ2152ES, that was designed, engineered, manufactured, and introduced into the stream of commerce by Electrolux ("the Flones dryer").

35. On November 9, 2017, the Flones dryer spontaneously combusted, causing a fire in the Floneses' home located at 6241 Bald Eagle Road, Mt. Pleasant, Wisconsin.

36. The fire caused property damage to Floneses' home and their personal property in the home. The actual cash value of the damages caused by the fire is $356,386.98.

37. At the time of the fire, American Family had issued to the Floneses, and there was in full force and effect, a policy of insurance that insured the Floneses against the damages caused by the fire. As required by, and pursuant to its policy, American Family paid to, or on behalf of, the Floneses for the damages caused by the fire, less any applicable deductible, and is subrogated to the rights of the Floneses to the extent of its payments.

### The Van Engen fire

38. Nicholas and Elizabeth Van Engen ("the Van Engens") purchased a ball hitch clothes dryer that was designed, engineered, manufactured, and introduced into the stream of commerce by Electrolux ("the Van Engens dryer").

39. On March 15, 2018, the Van Engens' dryer spontaneously combusted, causing a fire in the Van Engens' home located at 1510 Indigo Drive, Oshkosh, Wisconsin.

40. The fire caused property damage to Van Engens' home and their personal property in the home. The actual cash value of the damages caused by the fire is $74,025.31.

41. At the time of the fire, American Family had issued to the Van Engens, and there was in full force and effect, a policy of insurance that insured the Van Engens against the damages caused by the fire. As required by, and pursuant to its policy, American Family paid to, or on behalf of, the Van Engens a portion of the damages caused by the fire, less any applicable deductible, and is subrogated to the rights of the Van Engens to the extent of its payments.

## FIRST CAUSE OF ACTION: STRICT PRODUCT LIABILITY

42. Plaintiffs incorporate herein by reference the preceding paragraphs.

43. The subject dryers were unreasonably dangerous and defective at the time it left the control of Electrolux.

44. Each of the subject dryers contained one or more of the following design defects:

    (a) the subject dryers were designed, formulated, and manufactured with a heater pan directly behind the drum and in direct proximity to the gas or electric heat source so that lint released by the laundry tumbling in the drum could migrate to and accumulate behind the drum and in the heater pan where it could be ignited by the heat source of the clothes dryer;

    (b) the subject dryers were designed, formulated, and manufactured with a combustible plastic air duct directly below the drum and combustible plastic blower housing adjacent to that air duct, which combustible plastic components accumulate combustible lint released by the laundry tumbling in the drum during its intended operation as a clothes dryer;

    (c) the subject dryers were designed, formulated, and manufactured so that particles of lint that accumulate and ignite behind the drum and within the heater pan can travel into and

through the drum and thereby ignite the additional lint that has accumulated within the combustible plastic air duct and blower housing and/or the laundry load that has been dried in the drum;

(d) the subject dryers were designed, formulated, and manufactured in a manner that accumulates lint in areas within the clothes dryer that are not visible to the user unless the clothes dryer cabinet is dismantled and clothes dryer drum is removed;

(e) the subject dryers were designed, formulated, and manufactured in a manner that accumulates lint in areas within the clothes dryer in areas that are not serviceable by the homeowner;

(f) the subject dryers were designed, formulated, and manufactured with combustible plastic components within which plastic components it was foreseeable that lint would accumulate and ignite;

(g) the subject dryers were designed and manufactured without adequate warning or instructions to the user regarding the known danger that lint can accumulate and ignite in areas behind the drum and within the combustible plastic air duct and/or blower housing, which areas are not visible to or serviceable by the user;

(h) the subject dryers were designed and manufactured without adequate warning or instructions regarding the known danger that lint can accumulate and ignite in areas behind the drum and within the combustible plastic air duct and/or blower housing, which areas are not visible to or serviceable by the user;

(i) the subject dryers were designed and manufactured without any warning contained on the clothes dryer regarding the known danger that lint can accumulate and ignite in areas

8

behind the drum and within the combustible plastic air duct and/or blower housing, which areas are not visible to or serviceable by the user;

(j) the subject dryers were designed, formulated, and manufactured with front drum seals that failed to seal the drum from the surrounding cabinet and thereby promoted the accumulation of lint behind the drum and in the heater pan where it could be ignited by the gas or electric heat source of the subject dryer;

(k) the subject dryers were designed, formulated and manufactured with combustible plastic components parts which Electrolux knew, or should have known, could ignite and permit the fire to escape the dryer cabinet;

(l) the subject dryers were designed, formulated, and manufactured with combustible plastic components parts which Electrolux knew, or should have known, would not prevent the fire from escaping the dryer cabinet if they became ignited;

(m) The subject dryers were designed, formulated, manufactured and sold without adequate warnings or instructions regarding the known danger of the inherent accumulation of combustible lint in areas of the dryer which are not visible to the user and in close proximity to the dryer's gas or electric heat source, in areas which are not serviceable by the user, and pose a fire risk; and

(n) the subject dryers were designed, formulated, manufactured and sold in a defective nature because the lubricant used at or near the ball hitch or ball bearing – which holds the dryer's drum in place – contained an improper lubricant that was or could be effected by lint accumulation and fail.

45. When used in its intended and reasonably foreseeable manner, the subject dryers are a defective consumer product that is dangerous to an extent beyond that which would be contemplated by the ordinary consumer.

46. The subject dryers are defective because the foreseeable risks associated with its design exceed all benefits.

47. The design defects caused foreseeable risks of harm posed by the dryers which could have been reduced or avoided by the adoption of a reasonable alternative design.

48. The omission of the alternative design rendered the product not reasonably safe.

49. The subject dryers included inadequate instructions or warnings.

50. The foreseeable risks of harm posed by the the subject dryers could have been reduced or avoided by the provision of reasonable instructions or warnings.

51. The omission of reasonable instructions or warnings renders the dryers not reasonably safe.

52. The defective conditions caused by the design defects and inadequate instructions rendered the subject dryers unreasonably dangerous to the property of their owners.

53. The defective conditions existed at the time the subject dryers left the control of Electrolux.

54. Each subject dryer reached its user without substantial change in the condition in which it was sold.

55. The defective conditions were a cause of the fires and resulting damages sustained by the owners and paid by American Family.

## SECOND CAUSE OF ACTION: NEGLIGENCE

56. Plaintiffs incorporate herein by reference the preceding paragraphs.

57. Electrolux owed Curtis, the Floneses and the Van Engens a duty to use reasonable care in the design, testing, engineering, manufacturing and sale of the subject dryers.

58. Electrolux breached its duty to Curtis, the Floneses and the Van Engens in the following, and other, ways:

   (a) the clothes dryers were designed and manufactured with a heater pan directly behind the drum and in direct proximity to the heat source, either a gas burner flame or electric heating element, so that lint released by the laundry tumbling in the drum could migrate to and accumulate behind the drum and in the heater pan where it could be ignited by the heat source of the clothes dryer;

   (b) the clothes dryers were designed and manufactured with a combustible plastic air duct directly below the drum and combustible plastic blower housing adjacent to that air duct, which combustible plastic components accumulate combustible lint released by the laundry tumbling in the drum;

   (c) the clothes dryers were designed and manufactured so that particles of lint that accumulate and ignite behind the drum and within the heater pan can travel into and through the drum and thereby ignite the additional lint that has accumulated within the combustible plastic air duct and blower housing and/or the laundry load that has been dried in the drum;

   (d) the clothes dryers were designed and manufactured in a manner that accumulates lint in areas within the clothes dryer that are not visible to the user unless the clothes dryer cabinet is dismantled and clothes dryer drum is removed;

11

(e) the clothes dryers were designed and manufactured in a manner that accumulates lint in areas within the clothes dryer in areas that are not serviceable by the homeowner;

(f) the clothes dryers were designed and manufactured with combustible plastic components within which plastic components it was foreseeable that lint would accumulate and ignite;

(g) the clothes dryers were designed and manufactured without adequate warning to the user that lint can accumulate and ignite in areas behind the drum and within the combustible plastic air duct and/or blower housing, which areas are not visible to or serviceable by the user;

(h) the clothes dryers were designed and manufactured without adequate warnings that lint can accumulate and ignite in areas behind the drum and within the combustible plastic air duct and/or blower housing, which areas are not visible to or serviceable by the user;

(i) the clothes dryers were designed and manufactured without any warning contained on the clothes dryer that lint can accumulate and ignite in areas behind the drum and within the combustible plastic air duct and/or blower housing, which areas are not visible to or serviceable by the user;

(j) the clothes dryers were designed and manufactured with front drum seals that failed to seal the drum from the surrounding cabinet and thereby promoted the accumulation of lint behind the drum and in the heater pan where it could be ignited by the heat source of the clothes dryer.

59. Electrolux's breach of its duty was a cause of the fire and resulting damages sustained by the owners and paid by American Family.

60. Electrolux's actions were deliberate, in actual disregard of the subject dryers' owners' right to safety and property, and substantially certain to result in the disregard of the rights of the subject dryers' owners.

WHEREFORE, plaintiffs demand judgment against Electrolux in an amount to be determined, plus prejudgment interest, all taxable costs and fees, and all other just and equitable relief.

Dated: September 16, 2020

    RON HARMEYER LAW OFFICE LLC
    Attorneys for plaintiffs American Family
    Mutual Insurance Company

    *electronically signed Ronald W. Harmeyer*
    _____
    By: Ronald W. Harmeyer
    State Bar No. 1026579

330 E. Kilbourn Ave., Suite 1070
Milwaukee, WI 53202
Tel. (414) 316-2500
Fax (414) 755-7081
hnester@ronharmeyerlaw.com