UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

AMERICAN FAMILY MUTUAL INSURANCE
COMPANY, S.I., et al.,

          Plaintiffs,

      v.                                Case No. 20-CV-1455

ELECTROLUX HOME PRODUCTS, INC.,

          Defendant.

# ORDER

**"DEFENDANT, ELECTROLUX HOME PRODUCTS, INC.'S MOTION FOR RULE 11 SANCTIONS" (ECF No. 46.)**

This action relates to a series of residential fires associated with laundry dryers sold by Electrolux Home Products, Inc. The plaintiffs retained Michael Stoddard as an expert. Stoddard investigated similar fires as part of his prior employment with the Wright Group, and he sought to support his present opinions with information he relied on in those investigations.

When Electrolux pushed back on the plaintiffs' efforts to get the information Stoddard wanted to see, the plaintiffs filed a motion to compel (ECF No. 23) and a

motion for a discovery master (ECF No. 30), which led to three conferences with the court (ECF Nos. 28, 37, 38).

In an August 5, 2022, affidavit submitted in conjunction with the plaintiffs' motion to appoint a discovery master (ECF No. 30), Stoddard averred:

> 9. The requests for production of documents served by the plaintiffs in this case were specifically designed to obtain all documents that I have reviewed in the past, and rely on to form my opinions as to the design of the Electrolux dryers.
>
> 10. In this case, Electrolux has failed to produce all of the documents that were requested by the plaintiffs. According to the screen shot attached as Exhibit D, Electrolux has produced 136,519 files consisting of 390,614 pages. However, in a recent case in which I was deposed, Erika Chaney v. Electrolux Home Products, Inc., Western District of Missouri case no. 4:20-CV-0038-BCW, I reviewed over 500,000 pages. This included over 100 depositions of Electrolux current and former employees (from a total of approximately 20 different people). These depositions have not been produced.
>
> 11. I have reviewed the privilege log produced by Electrolux in this case. While it is impossible to confirm given the format of the log, it does not appear to me that a significant number of documents I reviewed in other cases appear on this log.
>
> 12. In several other cases in which I was retained, I produced to Electrolux (through plaintiff's counsel) all research material which I had created, including videos and data compilations. In this case, the plaintiffs specifically have requested this material. See Requests 39 and 41. No material relating to these requests has been produced in this case. I do not otherwise have access to much of this material, as it was created while I was an employee of The Wright Group, and I no longer am employed there.
>
> 13. The documents that I produced in other cases do not appear on this privilege log.

2

Case 2:20-cv-01455-WED   Filed 10/19/23   Page 2 of 13   Document 64

> 14. In multiple cases, Electrolux filed *Daubert* motions in its attempts to have my testimony excluded from trial. The briefings and exhibits are relevant to the work I will perform in this case and the opinions I will present. The briefings, affidavits and orders relating to these motions were requested by the plaintiffs. See Request 38. They have not been produced.
>
> 15. The documents relating to Electrolux's *Daubert* motions do not appear on this privilege log.
>
> 16. In order for me to complete my work and produce my report as required by Rule 26, I must have access to the documents requested and not yet produced by Electrolux.

(ECF No. 32.)

The plaintiffs in their motion for a discovery master sought as alternative relief, among other things, to compel Electrolux to produce "all documents identified in the Affidavit of Michael Stoddard that he needs to complete his report." (ECF No. 31 at 10.)

In the two conferences with the court that followed the filing of this motion (ECF Nos. 37, 38; *see also* ECF No. 55), the scope of the plaintiffs' discovery requests became a moving target. But what is material for present purposes is that the court discussed at length the plaintiffs' demand for documents that Stoddard had reviewed in other cases.

Several months later, during his May 23, 2023, deposition, Stoddard testified that in roughly the Spring of 2022 (and thus before the plaintiffs' August 8, 2022, motion to appoint a discovery master and before the two conferences that followed that motion) he purchased certain material from the Wright Group. (ECF No. 46, ¶ 17; *see also* ECF No. 46-3 at 5, 14:3-15:6.) Neither Stoddard nor plaintiffs' counsel previously disclosed to

Electrolux or the court that Stoddard had purchased documents from the Wright Group.

Electrolux has moved for sanctions, arguing that the plaintiffs' motion to compel lacked a good faith basis because they were seeking documents that Stoddard already had.

In response, the plaintiffs do not actually dispute the substance of Electrolux's motion—that the plaintiffs sought to compel from Electrolux documents that Stoddard already had in his possession, having previously purchased them from the Wright Group. Instead, they note that Stoddard was somewhat ambiguous as to when he purchased the documents from the Wright Group. And when he received the documents, he had problems with the hard drive and it was not March 20, 2023, that he was able to open all the files.

Stoddard could not recall the precise date on which he purchased the documents from the Wright Group and was not "a hundred percent sure" that it was before August 2022 (ECF No. 46-3 at 5, 14:17-15:6), but he said it was "[p]robably in the spring of '22, (ECF No. 46-3 at 5, 14:19). Although he submitted an affidavit in response to Electrolux's present motion for sanctions, he did not dispute that, at the time the plaintiffs sought production of the Wright Group documents from Electrolux, he already had them, having purchased them from the Wright Group. Thus, Electrolux has adequately proven that, by the time the plaintiffs filed their motion to appoint a discovery master

4

on August 8, 2022 (ECF No. 30), Stoddard had obtained the Wright Group documents regarding Electrolux dryer fires.

Stoddard's purchase of the documents from the Wright Group is material only if the documents the plaintiffs were demanding from Electrolux included the same documents that Stoddard already had. The precise nature of the documents Stoddard purchased is unclear. But in his recent affidavit Stoddard states that the reason he wanted (and apparently still wants) Electrolux to produce documents related to the Wright Group is because:

> Due to the amount of material on the hard drive (approximately two terabytes of data), I cannot independently confirm whether or not the hard drive I was given by the Wright Group does, in fact, contain all of my research. The only way I can confirm this is to compare it to a copy of the hard drive that is in Electrolux's possession.

(ECF No. 51, ¶ 5.)

A comparison is possible only if the documents are the same, and thus with his affidavit Stoddard makes clear that he expected that what the plaintiffs were demanding from Electrolux would be the same as what he had purchased from the Wright Group.

The plaintiffs attempt to defend the propriety of their demand by asserting that it was not until March 20, 2023, that Stoddard was able to access all files on the hard drive he purchased from the Wright Group. Specifically, Stoddard avers, "I was unable to open many of the files. As I explained during my deposition in this case, I believed the

files to have been corrupted." (ECF No. 51, ¶ 6.) Tellingly, Stoddard does not indicate the extent to which he was unable to access any file. It was apparently not significant enough to interfere with his ability to produce his report, which he did on February 8, 2023, without the court ordering Electrolux to produce the documents that Stoddard had previously averred he "must have access to" "[i]n order for [him] to complete [his] work and produce my report as required by Rule 26" (ECF No. 32, ¶ 16).

Stoddard's averment in his affidavit in support of the plaintiffs' discovery motion that, "I do not otherwise have access to much of this material, as it was created while I was an employee of The Wright Group, and I no longer am employed there," was, at a minimum, misleading. Whether Stoddard's qualification in referring to "much" of the material was sufficient to prevent his statement from crossing the line into actual perjury is not a question the court need resolve at this point.

Electrolux has proven that the plaintiffs filed a motion to compel Electrolux to produce documents that its expert already had. Stoddard's professed desire to be able to verify that the Wright Group gave him all the documents he paid for is an inappropriate use of the discovery process. Electrolux cannot be forced to bear the costs associated with a non-party's desire to ensure that he got the benefit of his bargain with another non-party.

Turning to the question of the knowledge of plaintiffs' counsel, he submitted his own affidavit in response to Electrolux's motion for sanctions. (ECF No. 50.) Notably, he

6

does not deny knowing that Stoddard already had the documents that the plaintiffs were demanding Electrolux produce. However, it does not appear that defense counsel questioned Stoddard at his deposition about the extent to which he informed plaintiffs' counsel about his purchase of documents from the Wright Group. Nonetheless, in light of all the facts, the court finds that plaintiffs' counsel knew or should have known that Stoddard already had the documents that the plaintiffs sought to compel Electrolux to produce.

Electrolux seeks sanctions under Rule 11 for the plaintiffs conduct in filing and litigating their motion to compel. Rule 11, however, is very clear: "This rule does not apply to disclosures and discovery requests, responses, objections, and motions under Rules 26 through 37." Fed. R. Civ. P. 11(d). Electrolux is not entitled to relief under Rule 11 for the plaintiffs' abuse of discovery.

The inapplicability of Rule 11 does not get the plaintiffs off the hook. "Federal courts possess certain 'inherent powers,' not conferred by rule or statute, 'to manage their own affairs so as to achieve the orderly and expeditious disposition of cases.'"[1] *Goodyear Tire & Rubber Co. v. Haeger*, 581 U.S. 101, 107 (2017) (quoting *Link* v. *Wabash R. Co.*, 370 U. S. 626, 630-631 (1962)). "That authority includes 'the ability

---

[1] Under 28 U.S.C. § 1927, "[a]ny attorney … who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." Although Harmeyer unreasonably multiplied the proceedings by demanding and then pursing a motion to compel Electrolux to produce documents that Stoddard already had, the evidence is insufficient to conclude that Harmeyer acted vexatiously. Therefore, § 1927 is inapplicable.

to fashion an appropriate sanction for conduct which abuses the judicial process.'" *Id.* (quoting *Chambers v. NASCO, Inc.*, 501 U. S. 32, 44-45 (1991)).

When a party abuses the discovery process, the court may impose sanctions necessary to compensate the other side for costs incurred as a result of the abuse. *Goodyear Tire & Rubber*, 581 U.S. at 108. Punitive, as opposed to compensatory, sanctions would be appropriate only upon satisfaction of the proof beyond a reasonable doubt burden of proof, *id.*, which Electrolux has not met.

Electrolux seeks sanctions as follows:

> (a) striking in their entirety Mr. Stoddard's and Mr. Keefe's respective expert reports in this case and precluding them from testifying at any trial in this matter; (b) awarding Electrolux its actual attorneys' fees and costs incurred in defending against Plaintiffs' Motion to Appoint Discovery Master (Doc. 30), bringing its Motion to Amend the Scheduling Order (Doc. 39), and bringing this Motion for Sanctions; and (c) any other sanctions that the Court deems just.

(ECF No. 46 at 6.)

Striking the experts' reports and barring them from testifying at trial is outside the scope of available relief, and in any event is disproportionate to the misconduct at issue. The court, however, will give Electrolux the opportunity to prove the costs and fees it incurred addressing the plaintiffs' demand for documents that Stoddard already had. However, the plaintiffs' motion sought more than merely the documents Stoddard purchases from the Wright Group, and therefore care must be taken to disentangle the compensable costs from the overall costs.

If the parties do not otherwise resolve this dispute, no later than **November 8, 2023**, Electrolux shall present proof as to the costs and fees it incurred in responding to the plaintiffs' demand for documents that Stoddard had purchased from the Wright Group. Briefing will then proceed under Civil Local Rule 7.

**"PLAINTIFFS' MOTION FOR LEAVE TO CONDUCT DISCOVERY RELATING TO THE RECALL, MOTION TO COMPEL AND MOTION FOR SANCTIONS" (ECF No. 52.)**

Shortly after discovery closed Electrolux recalled certain dryers as a fire hazard. The plaintiffs ask to be able to conduct discovery regarding that recall. They further argue that they demanded discovery regarding other dryer fires and Electrolux violated its obligations by not supplementing its responses with information about the fires associated with the recall. (ECF No. 53.)

The discovery demands that the plaintiffs argue Electrolux was obligated to supplement (ECF No. 25-1 at 9, ¶ 35; 17, ¶¶ 23-25) were very specific. Interrogatory number 35 sought information regarding "each fire caused by an Alliance platform dryer." (ECF No. 25-1 at 9.) Requests for production numbers 23, 24, and 25 related to fires associated with "Electrolux ball hitch style dryers with plastic blower housing or plastic lint trap ducts." (ECF No. 25-1 at 17.)

The plaintiffs have not shown that the fires related to the recall fall within the scope of these discovery requests, *i.e.*, that the recall dryers were "Alliance platform dryer[s]" or that they were "ball hitch style dryers with plastic blower housing or plastic

lint trap ducts."[2] Accordingly, the plaintiffs have not shown that Electrolux was required to supplement its disclosures with information regarding the fires involved in the recall. If the plaintiffs' initial discovery requests did not encompass the fires associated with the recalled dryers, it is hard to see how those fires and discovery related to them are now relevant. The plaintiffs' motion to reopen discovery will be denied. Of course, if the fires that led to the recall *are* within the scope of any of the plaintiffs' discovery demands, Electrolux remains obligated to supplement its disclosures. The close of discovery does not cut off the duty to supplement. *Francis v. AIT Labs.*, No. 1:07-cv-0626-RLY-JMS, 2008 U.S. Dist. LEXIS 49015, at *3 (S.D. Ind. June 26, 2008).

The plaintiffs also seek to compel Electrolux to produce the documents Bates labelled "EHP-CHENEY-211387," "EHP-CHENEY-211386," and "EHP-CHENEY-211394." Plaintiffs state that they requested these documents in accordance with the court's instructions during the October 3, 2022, conference regarding its motion to appoint a discovery master. The plaintiffs rely on the minutes regarding that hearing. The minutes are not prepared by or approved by the court and instead are merely notes prepared by a deputy clerk of court. They are not an official record of the proceedings;

---

[2] The plaintiffs submitted an affidavit from Stoddard in which he avers, "Both the laundry centers and the freestanding dryers at issue in this case implement the same Ball-Hitch design.," (ECF No. 60, ¶ 2. a.), but the plaintiffs do not establish that the laundry centers that are subject to the recall also have a "plastic blower housing or plastic lint trap ducts."

10
Case 2:20-cv-01455-WED   Filed 10/19/23   Page 10 of 13   Document 64

only a transcript is official. *See McFarland-Lawson v. Fudge*, No. 16-CV-685, 2023 U.S. Dist. LEXIS 162085, at *1 (E.D. Wis. Sep. 13, 2023).

In any event, the minutes and the transcript both make clear that the court never ordered Electrolux to produce anything. Rather, the court told the parties to try to work out any further dispute. If they were unable to do so, then the plaintiffs could file another motion to compel.

But a motion to compel requires compliance with Civil Local Rule 37 (E.D. Wis.). Although the plaintiffs' counsel communicated with defense counsel, that communication was little more than a request and a refusal. This falls short of the substantive discussion contemplated by Civ. L.R. 37. For example, defense counsel responded that she was not clear as to the documents the plaintiffs were seeking. While the plaintiffs characterize this as "feinting [sic] confusion" (ECF No. 59 at 2), this is not necessarily so. The "CHENEY" in the Bates label presumably refers to another suit against Electrolux, *Chaney, v. Electrolux Home Products, Inc.*, 4:20-cv-38 (E.D. Mo.); (*see also* ECF No. 32, ¶ 10), and thus appears to be a typo. In any event, a Bates label from a case in which she was not involved might not be helpful to an attorney in identifying a document, and thus defense counsel may have required additional information to locate the document. These are all the sorts of things to be addressed in a meet-and-confer. Plaintiffs have not demonstrated that they attempted to clarify for defense counsel the documents being sought.

With the plaintiffs having not complied with their meet and confer obligations, the court must deny their motion to compel. However, the court acknowledges that, if a motion to compel Electrolux to produce the three specified documents were presented following a proper meet-and-confer, the court would be likely to grant it. Consistent with the court's instructions, the plaintiffs have identified certain specific documents that Stoddard was provided in another case and which he believes are necessary for him to be able to support his opinions in this case. Based on the plaintiffs' description of those documents, they appear relevant to the present dispute.

Having concluded that the plaintiffs' motions to reopen discovery and to compel must be denied, the plaintiffs' motion for sanctions is likewise denied.

**"DEFENDANT, ELECTROLUX HOME PRODUCTS, INC.'S, CIVIL L.R. 7(H) EXPEDITED NON-DISPOSITIVE MOTION FOR LEAVE TO FILE SUPPLEMENTAL AFFIDAVIT" (ECF No. 62.)**

Electrolux seeks leave to file a supplemental affidavit of its expert to support counsel's proffer—contained in her response to the plaintiffs' motion—that the seal at issue in the recalled dryer was a different seal than is at issue in the dryers that are the subject of this case.

The similarity or lack thereof between the seals at issue in this case and the recall is not relevant to the court's resolution of the plaintiffs' motion. Therefore, there is no good cause for a supplemental affidavit. Accordingly, the motion will be denied.

**IT IS THEREFORE ORDERED** that "Defendant, Electrolux Home Products, Inc.'s Motion for Rule 11 Sanctions" (ECF No. 46) is **granted**. No later than **November 8, 2023**, Electrolux shall present proof as to the costs and fees it incurred in responding to the plaintiffs' demand for documents that Stoddard had purchased from the Wright Group. Briefing will then proceed under Civil Local Rule 7.

**IT IF FURTHER ORDERED** that "Plaintiffs' Motion for Leave to Conduct Discovery Relating to the Recall, Motion to Compel and Motion for Sanctions" (ECF No. 52) is **denied**.

**IT IF FURTHER ORDERED** that "Defendant, Electrolux Home Products, Inc.'s Civil L.R. 7(h) Expedited Non-Dispositive Motion for Leave to File Supplemental Affidavit" (ECF No. 62) is **denied**.

Dated at Milwaukee, Wisconsin this 19th day of October, 2023.

_____
WILLIAM E. DUFFIN
U.S. Magistrate Judge