UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

AMERICAN FAMILY MUTUAL INSURANCE
COMPANY, S.I., et al.,

                Plaintiffs,

     v.                              Case No. 20-CV-1455

ELECTROLUX HOME PRODUCTS, INC.,

                Defendant.

## ORDER

The court previously found that the plaintiffs abused the discovery process by seeking to compel from Electrolux certain documents (which the court and the parties have taken to calling the Wright Group documents) that its expert, Michael Stoddard, had already obtained through other means. *Am. Family Mut. Ins. Co. v. Electrolux Home Prods.*, No. 20-CV-1455, 2023 U.S. Dist. LEXIS 187829, at *9 (E.D. Wis. Oct. 19, 2023).

Stoddard has been an expert in many cases like this one involving fires in Electrolux dryers. He did that work as an employee of the Wright Group. When he left the Wright Group, he left behind his litigation and research files regarding those other cases. He sought to rely on those records to support his opinions in this case but,

because he no longer had access to the records through the Wright Group, the plaintiffs sought to compel Electrolux to produce them.

After the plaintiffs filed and litigated a motion to appoint a discovery master that, in part, sought to compel Electrolux to produce those documents, it came to light that Stoddard had already purchased the documents from the Wright Group. Stoddard explained that he sought to obtain the same documents from Electrolux so he could verify that he had gotten what he paid for from the Wright Group. *Am. Family Mut. Ins.*, 2023 U.S. Dist. LEXIS 187829, at *6 (quoting ECF No. 51, ¶ 5).

The court found this to be an abuse of the discovery process and gave Electrolux the opportunity to prove what costs it incurred as a result of the plaintiffs' misconduct. *Am. Family Mut. Ins.*, 2023 U.S. Dist. LEXIS 187829, at *9. However, because the parties' discovery fights included more than the documents that the plaintiffs' expert had already acquired, the court cautioned that "care must be taken to disentangle the compensable costs from the overall costs." *Id.*, at *10.

Defense counsel submitted an affidavit and various documents seeking $12,315 in costs. Counsel explained that she "saw no clear way to disentangle fees to the Motion for Discovery Master addressing several documents including the Wright Group documents" and therefore "applied a 25% reduction to the fees incurred in litigating the Motion for Discovery Master." (ECF No. 66, ¶ 6.) She then seeks all fees related Electrolux's motion for sanctions, which amounted to $7,117.50. (ECF No. 66, ¶ 6.)

2
Case 2:20-cv-01455-WED   Filed 12/08/23   Page 2 of 7   Document 70

In response, the plaintiffs seek to relitigate the defendant's motion for sanctions. The plaintiffs argue that they were never seeking the Wright Group documents, the documents were not discussed in motions or at hearings, and "appallingly, not only did it make up this issue through misrepresentations to the court, but its fraud on the court resulted in plaintiffs' counsel being sanctioned." (ECF No. 67 at 6.) Although the plaintiffs did not file a motion, they nonetheless ask that the court vacate its prior order and impose sanctions on defense counsel. (ECF No. 67 at 6.)

The plaintiffs' arguments are untimely and have been forfeited insofar as they were not presented in response to the defendant's motion for sanctions. But the court will briefly note that they are without merit and reflect a lack of acceptance of responsibility for what the court has already found to be troubling misconduct. If the arguments were properly before the court, the court would reject them.

The plaintiffs attempt to evade responsibility through obfuscatory semantics—specifically, the fact that their motion to appoint a discovery master and related documents did not refer to the "Wright Group documents."

The Wright Group documents is merely a shorthand that the court and the parties (mostly Electrolux) have employed to refer to a category of documents at issue in the plaintiffs' motion for a discovery master. The Wright Group documents represent only the documents that Stoddard produced or relied on when he was employed at the Wright Group but to which he no longer had access. They do not encompass all

3

litigation documents produced in those prior cases. Although the plaintiffs asked the court to also compel Electrolux to produce those documents, those documents would not be within the scope of the Wright Group documents because Stoddard was clear that he had to destroy many documents after each case was over. (ECF No. 31 at 4). Rather, the Wright Group documents encompass primarily, if not exclusively, Stoddard's "research material," "including videos and data compilations." *Am. Family Mut. Ins.*, 2023 U.S. Dist. LEXIS 187829, at *2-*3 (quoting ECF No. 32, ¶ 12).

Even now it is unclear precisely what Stoddard obtained from the Wright Group. But as the court stated in its prior decision, it can be confident that the plaintiffs were asking the court to compel Electrolux to produce documents that Stoddard had obtained from the Wright Group. Stoddard explained that he wanted the documents from Electrolux so he could compare them to what he obtained from the Wright Group and confirm he received all his research. *Am. Family Mut. Ins.*, 2023 U.S. Dist. LEXIS 187829, at *6. "A comparison is possible only if the documents are the same …." *Id.*

The lack of clarity as to precisely what Stoddard obtained from the Wright Group compounds the difficulty in assessing the extent to which Electrolux was damaged by the plaintiffs' misconduct.

As noted, the plaintiffs' motion to appoint a discovery master sought more than what have come to be referred to as the Wright Group documents. Significant in the plaintiffs' motion was the fact that, in their words, Electrolux produced "a random

document dump." (ECF No. 31 at 3.) It wanted the court to order Electrolux to identify, by Bates number, the documents it produced in response to each request. (ECF No. 31 at 9.)

The plaintiffs also demanded that Electrolux produce documents that it had produced in other cases but that Stoddard had to destroy at the end of each case. (ECF No. 31 at 4). They also wanted litigation documents—briefs and affidavits related to previous *Daubert* challenges of Stoddard. (ECF No. 31 at 5.) Electrolux has not established that these documents were within the scope of the documents that Stoddard purchased from the Wright Group.

To account for the fact that the Wright Group documents were only a portion of the plaintiffs' request, Electrolux proposes a 25 percent reduction of the fees it incurred regarding the plaintiffs' motion to appoint a discovery master. The court finds this reduction insufficient. Based on the court's review of the relevant record—the plaintiffs' motion (ECF No. 30), the parties' briefs (ECF Nos. 31; 34; 35), the parties supporting documents (ECF Nos. 32; 31-1 – 32-6; 33; 33-1 – 33-6; 34-1; 36; 36-1 – 36-9), and transcripts of the relevant hearings (ECF Nos. 55; 68)—the court finds that Electrolux has failed to prove that 75 percent of the relevant proceedings and related costs were the result of the plaintiffs' demand for documents that Stoddard had already obtained from the Wright Group. Rather, the court finds that Electrolux has proven only that one-third of the costs it expended in regards to the plaintiffs' motion to appoint a discovery

5

master were attributable to their improper demand for documents that Stoddard already had. Accordingly, Electrolux has proven that it is entitled to $2,310 in attorney fees for costs incurred related to the plaintiffs' prosecution of a motion to compel Electrolux to produce documents that Stoddard had already purchased from the Wright Group.

The court underscores that its award of costs is compensatory—to make Electrolux whole for the costs it needlessly expended in light of the plaintiffs' abuse of discovery. Therefore, the costs Electrolux incurred in prosecuting its motion for sanctions are also clearly costs occasioned by the plaintiffs' misconduct and therefore are also compensable.

Stoddard's purchase of the Wright Group documents came to light in his May 23, 2023, deposition. *Am. Family Mut. Ins.*, 2023 U.S. Dist. LEXIS 187829, at *4. Only costs incurred after that date could be related to the prosecution of the motion for sanctions. Electrolux's tally of $7,117.50 includes three entries—February 7, April 28, and May 18, 2023—totaling $260 (ECF No. 66-3) that predate Stoddard's May 23, 2023, deposition and long post-date the court's resolution of the plaintiffs' motion to appoint a discovery master. The court excludes those costs because Electrolux offers no explanation as to how it incurred costs pursuing a motion for sanctions prior to the discovery of the sanctionable misconduct during Stoddard's deposition.

Therefore, the court finds that Electrolux has established that it is entitled to recover the costs incurred after Stoddard's deposition, which total 21.1 hours, for a total of **$6,857.50**. Because these are costs that Electrolux actually incurred as a result of the plaintiffs' misconduct, they must be borne by the plaintiffs.

This sum, combined with one-third of the costs Electrolux incurred addressing the plaintiffs' motion to appoint a discovery master ($2,310) brings the total award to Electrolux to $9,167.50. Because the misconduct is attributable to plaintiffs' counsel and not the plaintiffs, this sum shall be paid by plaintiffs' counsel.

**IT IS THEREFORE ORDERED** that, within **28 days** of the date of this order, plaintiffs' counsel, Ronald W. Harmeyer, shall pay to Electrolux Home Products, Inc. the sum of **$9,167.50** in compensation for costs Electrolux incurred as a result of Harmeyer's abuse of discovery.

Dated at Milwaukee, Wisconsin this 8th day of December, 2023.

_William E. Duffin_
WILLIAM E. DUFFIN
U.S. Magistrate Judge