UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

AMERICAN FAMILY MUTUAL INS. CO., S.I., ET AL.

    Plaintiffs,

v.

                                                         Case No. 2:20-CV-01455

ELECTROLUX HOME PRODUCTS, INC.,

    Defendant.

---

## PLAINTIFFS' BRIEF IN OPPOSITION TO ELECTROLUX'S MOTION TO EXCLUDE CERTAIN OPINIONS OF MICHAEL STODDARD

---

For the following reasons, Electrolux's motion to exclude certain opinions of Michael Stoddard should be denied.

### MR. STODDARD'S OPINIONS THAT DEFECTS IN THE DESIGN OF THE ELECTORLUX DRYER CAUSED THE FIRES ARE ADMISSIBLE.

On pages 5-11 of its brief (doc. 72), Electrolux attempts to argue that Mr. Stoddard's opinion that defects in the dryers caused the fires should not be allowed at trial. This is precisely the same argument that Electrolux has made against Mr. Stoddard in several other lawsuits, and it is an argument that courts have repeatedly rejected, and for good reason. Unlike the expert that Electrolux identified in this case (Richard Marzola), who conducted no testing whatsoever to verify his opinions, Mr. Stoddard has meticulously followed the scientific method in all aspects of his work that forms the basis of his opinions. As other courts have found, Mr. Stoddard's opinions clearly meet the requirements of Rule 702 and *Daubert*.

Filed with this brief is the Affidavit of Michael Stoddard. It sets forth in detail the process that he followed to reach his opinions and conclusions and establishes the following.

### *Mr. Stoddard has scientific, technical, or other specialized knowledge that will help the trier of fact to understand the evidence or to determine a fact in issue.*

The first requirement of Rule 702 is that an expert witness have "scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue." Mr. Stoddard unquestionably meets this requirement.

He has received degrees in arson investigation, electromechanical technology and advanced safety engineering and management. He has taken extensive course work directly relevant to this case. (Stoddard Aff. ¶ 3-4)

He has been asked to give several presentations specifically on the topic of dryer fires, to organizations such as the International Association of arson Investigators and the National Association of Subrogation Professionals. (Stoddard Aff. ¶ 6)

He has taken over 1,200 hours of continuing education courses in the field of fire investigation. (Stoddard Aff. ¶ 8-9)

He has been certified by the International Association of Arson Investiagators as a Certified Fire Investigator. He has served on the UL Standards Technical Panel for several UL Standards relevant to this case, including UL 2158: Electric Clothes Dryers. (Stoddard Aff. ¶ 10-13)

He has 34 years of fire investigative experience. During this time, he has investigated hundreds of dryer fire cases. (Stoddard Aff. ¶ 16-20)

He has extensive experience in product failure analysis as it relates to fire causation. (Stoddard Aff. ¶ 21-23). Courts have repeatedly found that he is qualified to testify on this topic given his experience. (Stoddard Aff. ¶ 24-30). For example:

> I am satisfied that *Stoddard has ample practical experience that qualifies him as an expert* with respect to the cause and origin of the subject fires *as well as dryer design and safety*. Stoddard has spent a decade testing and examining dryers, fires associated with those dryers, *dryer design, dryer operation, and dryer failure modes*, Stoddard has similar experience assessing accepted warning label or product literature.

*American Family Mut. Ins. Co. et al. v. Electrolux Home Products, Inc.*, W. D. Wis., 11-cv-678 (Stoddard Aff. Exh, Exhibit 2, pp. 3, 4, 6, 8).

> Based upon his extensive involvement in driers over a number of years in terms of examinations, the tests, training, I believe that *he satisfies the requirement for qualifications under the Daubert standard.*
> . . .
> And again, in the area of expertise that I've indicated, I believe that *he has acquired sufficient expertise* in his extensive examination and testing of driers over the years; over 1,000 hours of testing, over 500 examinations to allow him to render opinions in this area.
> . . .
> I believe *he has acquired sufficient knowledge and expertise to give such opinions*.

*State Farm Fire & Casualty Company v. Electrolux Home Products, Inc. et al.*, E.D. NY, 10-cv-03901 (Stoddard Aff. Exhibit 3, 4:16-19; 5:2-6; 5:17-6:2; 6:14-7:6).

> I find that *Mr. Stoddard is qualified to testify as to the cause and origin of the fire* which, in this case, includes the allegedly defective design of the Electrolux clothes dryer. . . I find that Mr. Stoddard possesses specialized skill or knowledge in the area of dryer design that is "greater than the average layman." Id. at 4 (citing Elcock, 233 F.3d at 741). Therefore, *he is qualified to testify*

as to the cause and origin of the fire, including that the fire was allegedly *caused by the defective design* of the Electrolux dryer.

Joseph Vitale et al., v. Electrolux Home Products, Inc., E.D. Penn., 15-cv-01815 (Stoddard Aff. Exh. 4, pp. 16, 17, 18, 19).

After reviewing Mr. Stoddard's qualifications, this court should reach the same conclusion as the courts cited above and find that Mr. Stoddard is qualified to offer his opinions.

### *Mr. Stoddard's opinions are based on sufficient facts or data.*

The second requirement of Rule 702 is that the opinions be "based on sufficient facts or data." Mr. Stoddard's opinions meet this requirement.

Regarding the data relating to each specific fire, the data relied on by Mr. Stoddard is set forth on pages 13 - 17 of his report (Stoddard Aff. Exh. 4).

Regarding the data relating to the dryers' design, the data relied on by Mr. Stoddard is set forth on pages 17-19 of his report, as well as the hard drive containing his research, a copy of which he obtained from the Wright Group (see doc. 51).

Mr. Stoddard generated additional data as a result of performing 11 different physical tests. These tests are described on pages 138-154 of his report.

Mr. Stoddard compared the data he generated with the data of other experts who had performed similar research. (Stoddard Aff. ¶44.a.) Mr. Stoddard obtained documents from the Consumer Product Safety Commission relating to its research. (Stoddard Aff. ¶44.b.). The data in these documents are discussed on pages 155-158 of his report.

Finally, Mr. Stoddard has reviewed hundreds of thousands of pages of documents obtained from Electrolux itself, and has also reviewed the depositions of 20 Electrolux

employees, including three Product Safety engineers, director of engineer, and four design engineers. The review of these documents provided a substantial amount of data on which Mr. Stoddard relies, as documented in his report on pages 158 - 201.

The factual record before the court clearly establishes that Mr. Stoddard's opinions are based on sufficient facts and data.

### *Mr. Stoddard's opinions are the product of reliable principles and methods.*

The third requirement of Rule 702 is that the expert opinion be "the product of reliable principles and methods." Mr. Stoddard's opinions meet this requirement.

The methodology used by Mr. Stoddard is the scientific method. (Stoddard Aff. ¶ 31). In his report on pages 19-25, Mr. Stoddard discusses the use of the scientific method in his work. This is a reliable method of inquiry. As the Supreme Court stated in *Daubert*:

> . . . in order to qualify as "scientific knowledge," an inference or assertion must be derived by the scientific method.

*Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 590 (1993).

In response to Electrolux's *Daubert* motions in other cases, courts have repeatedly found that Mr. Stoddard has employed reliable principles and methods:

> Applying these considerations to Stoddard's opinions, I am satisfied that he reached his defective design theory *as a result of reliable methods* and that sufficient facts and data exist to support his conclusions.

*American Family Mut. Ins. Co. et al. v. Electrolux Home Products, Inc.*, W. D. Wis., 11-cv-678 (Stoddard Aff., Exh. 2, p.6 ).

> Moving to the second requirement, I find that his opinions, again for purposes of *Daubert*, *is based upon sufficient methodology,*

*reliable methodology* . . .

*State Farm Fire & Casualty Company v. Electrolux Home Products, Inc. et al.*, E.D. NY, 10-cv-03901 (Stoddard Affidavit, Exhibit 3, 5:17-6:2).

> I find that *Mr. Stoddard's testimony concerning the allegedly defective design of the dryer is reliable* under *Daubert*. Mr. Stoddard's opinion concerning the cause and origin of the fire is based on the methods and procedures of science, not on subjective or unsupported speculation. His investigation was guided by the NFPA 921: Guide for Fire and Explosion Investigations, which "is a consensus document addressing all aspects of fire science, and has been recognized by numerous federal courts as providing a reliable methodology for fire investigation." Pls.' Resp. to Def.'s Mot. in Lim. (ECF No. 37-1 at 15) (citing to State Farm Fire & Cas. Co. v. Steffen, 948 F. Supp. 2d 434, 442 (E.D. Pa. 2013)). Mr. Stoddard's investigation also included a dozen separate categories of tests performed by Mr. Stoddard, which satisfies Daubert's "testability" factor.

*Joseph Vitale et al., v. Electrolux Home Products, Inc.*, E.D. Penn., 15- cv-01815 (Stoddard Aff. Exh. 7, p. 17).

Just as the other court's have done, this Court should find that Mr. Stoddard's use of the scientific method meets the "reliable principles and methods" requirement of Rule 702.

### *Mr. Stoddard's opinions reflect a reliable application of the principles and methods to the facts of the case.*

The final requirement of Rule 702 is that the expert's opinion "reflects a reliable application of the principles and methods to the facts of the case." Mr. Stoddard's opinions meet this requirement.

In his affidavit, Mr. Stoddard describes in detail how he applied his principles and method (i.e., the scientific method) to the facts of this case. Consistent with the scientific method:

6

- Mr. Stoddard gathered data. The data he gathered is discussed on pages 13-19 of his report. (Stoddard Aff. ¶37-40)

- Mr. Stoddard formed three hypotheses. (Stoddard Aff. ¶41)

- Mr. Stoddard performed 11 distinct physical tests in order to test his three hypotheses. These 11 physical tests are discussed on pages 138 - 154 of his report. (Stoddard Aff. ¶43)

- Mr. Stoddard compared his findings with findings and data of other sources, including other expert testing, records obtained from the Consumer Product Safety Commission, and Electrolux itself. This work is discussed on pages 158 - 201 of his report. (Stoddard Aff. ¶44)

- Mr. Stoddard eliminated alternative hypotheses, as discussed on pages 39-54 of his report. (Stoddard Aff. ¶45-46)

- Mr. Stoddard confirmed his hypothesis. The hypotheses relating to the design defects were confirmed though the testing and research after eliminating alternative hypotheses. The hypothesis relating to the fires that are the subject of this lawsuit was confirmed as discussed on pages 6-12 and 208-212 of his report. (Stoddard Aff. ¶47-50)

The foregoing factual record unquestionably establishes that Mr. Stoddard reliably applied the scientific method to the facts of this case. And it is for this reason that other courts have found that Mr. Stoddard's opinions reflect a reliable application of the principles and methods to the facts of the case as required by Rule 702:

> I believe again that he has accumulated sufficient facts and data and *applied it to an accepted methodology* in reaching his conclusions. And therefore this prong of Daubert is satisfied.

*State Farm Fire & Casualty Company v. Electrolux Home Products, Inc. et al.*, E.D. NY, 10-cv-03901 (Stoddard Affidavit, Exhibit 3, 7:11-13).

> I find that the Rule 702 factors weigh in favor of admitting Mr. Stoddard's testimony concerning the use of plastics in the dryer. Mr. Stoddard's method consists of a testable hypothesis – Mr. Stoddard tested the burn characteristics of HB-rated plastics and 5V-rated plastics and concluded that the use of alternative materials would be effective in containing the fire to the cabinet in most conditions. Pls.' Resp. to Def.'s Mot. in Lim. (ECF No. 37-1 at 16) (citing to Mr. Stoddard's report at 172-176). *This is sufficiently reliable under Daubert's flexible standard.*

*Joseph Vitale et al., v. Electrolux Home Products, Inc., E.D. Penn.*, 15- cv-01815 (Stoddard Aff. Exh. 7, pp. 19).

This Court should find Mr. Stoddard's opinions reflect a reliable application of the principles and methods to the facts of the case as required by Rule 702.

## MR. STODDARD'S "PRINCIPLES OF SAFETY ENGINEERING" ANALYSIS OF THE DRYERS IS ADMISSIBLE.

On page 11 of its brief, Electrolux begins its argument that Mr. Stoddard's opinions regarding warnings and instructions should be excluded. Electrolux's argument reveals a fundamental misunderstanding of Mr. Stoddard's opinion.

The basis of Electrolux's argument is that Mr. Stoddard is not a human factors expert. This much is not in dispute, as Mr. Stoddard has never held himself out to be a human factors expert. The problem with the argument is that Mr. Stoddard is not offering opinions related to

the field of human factors. Rather, he is offering opinions relating to the field of safety engineering — a field in which he certain is qualified.

### *The distinction between human factors engineering and safety engineering*

Mr. Stoddard has a masters degree in safety engineering and management. He does not, as alleged by Electrolux, hold himself out as a human factors engineer. The two are distinct disciplines. Human factors engineering has been described as follows:

> Human factors and ergonomics (commonly referred to as human factors engineering or HFE) is the application of psychological and physiological principles to the engineering and design of products, processes, and systems. [1]

Meanwhile, the same source describes safety engineering as:

> Safety engineering is an engineering discipline which assures that engineered systems provide acceptable levels of safety. It is strongly related to industrial engineering/systems engineering, and the subset system safety engineering.[2]

Electrolux has simply confused these two disciplines when arguing Mr. Stoddard should not be allowed to give safety engineering principles because he is not a human factors engineer.

### *Mr. Stoddard's opinions are safety engineering opinions, not human factors opinions.*

As explained in his affidavit, Mr. Stoddard's opinions relating to warnings are based on the principles of safety engineering, a field in which he has received a masters degree. To summarize, relative to this case, safety engineering mandates that, if possible, a risk should be engineered out of a product. If it cannot be eliminated, it should be guarded against. If it cannot be guarded against, only then should the product rely on warnings. (Stoddard Aff. ¶59)

---

[1] https://en.wikipedia.org/wiki/Human_factors_and_ergonomics

[2] https://en.wikipedia.org/wiki/Safety_engineering

The first opinion which Mr. Stoddard offers is that Electrolux violated this safety engineering principle when it relied on warnings rather than eliminating the risk of fire hazard. This is discussed on pages 23-24 of his report. (Stoddard Aff. ¶60) This is a safety engineering opinion, as it relates to the design and engineering of the product, *not* how a human will interact with, or perceive, the product.

A separate factual observation made by Mr. Stoddard is that Electrolux simply gave no warnings whatsoever for several risks. (Stoddard Aff. ¶61). Against this is not an opinion on how users will perceive and interact with the warnings. Rather, it is a safety engineering issue regarding the design of the product.

The fact that these issues are not human factors opinions is further established by the fact that, at no time, did Electrolux itself ever hire, use, or consult with, any human factors personnel. (Stoddard Aff. ¶ 64) To say the least, it is odd for Electrolux to argue that a human factors engineer is necessary to critique its dryer when it did not use a human factors engineer to design the product in the first place. What Mr. Stoddard is offering opinions on is not the work of a human factors engineer, but whether the engineering of the product followed recognized practices in the filed of safety engineering.

Given this distinction, the court should find that Mr. Stoddard's opinions relating to the dryers' warnings, or lack thereof, are admissible.

### MR. STODDARD'S OPINIONS RELATING TO THE SEALS CONTRIBUTING TO THE CAUSE OF THE FIRES ARE ADMISSIBLE.

On page 13 of its brief, Electrolux makes the argument that Mr. Stoddard should not be permitted to testify that defects in front drum seals contributed to the cause of the fire. As a

10
Case 2:20-cv-01455-WED   Filed 01/15/24   Page 10 of 12   Document 79

preliminary matter, it should be noted that Electrolux claims Mr. Stoddard has insufficient facts to support his opinion. Yet, facts relating to Electrolux's well documented problems with its drum seals was precisely the subject of plaintiffs' motion to re-open discovery after Electrolux issued a recall due to the fire hazard created by leaking drum seals — four business days after the close of discovery in this case. Electrolux objected to the plaintiffs' motion, and the court did not grant it.[3]

In his affidavit, at §§66-77, Mr. Stoddard sets forth facts he relies on in forming his opinions relating to the role of the drum seal in the accumulation of lint in the dryer. Notwithstanding Electrolux's mischaracterization, there is an extensive set of facts, including four service bulletins and the recall, issued by Electrolux, as well as Mr. Stoddard's own physical testing and his examination of hundreds of dryers, that provide the facts and data needed for him to form his opinions on this issue.

The court should find that the the facts, as listed in Mr. Stoddard's affidavit, provides a sufficient basis to support his opinions.

## **CONCLUSION**

For the foregoing reasons, Electrolux's motion should be denied.

Date: January 15, 2024

                                                 RON HARMEYER LAW OFFICE LLC
                                                 Attorneys for Plaintiffs

                                                 */s/ Ronald W. Harmeyer*
                                                 Ronald W. Harmeyer
                                                 State Bar No. 1026579

---

[3] Given this history, if the court finds that Mr. Stoddard does not have a sufficient factual basis to offer his opinions, the plaintiffs renew their motion for leave to conduct discovery on this issue.

330 E. Kilbourn Ave., Suite 1070
Milwaukee, WI 53202
Tel. (414) 316-2500
Fax (414) 755-7081
rharmeyer@ronharmeyerlaw.com