# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WISCONSIN

---

**AMERICAN FAMILY MUTUAL INSURANCE COMPANY SI, et al.,**

**Plaintiffs,**

**v.**                                    **Case No. 20-CV-1455**

**ELECTROLUX HOME PRODUCTS, INC.,**

**Defendant.**

---

## DECISION AND ORDER

---

### 1. Background

Between November 2017 and April 2018, three homeowners insured by plaintiff American Family Mutual Insurance Company—Adam Curtis, Paul and Christine Flones, and Nicholas and Elizabeth Van Engen—suffered house fires traced to laundry dryers manufactured by defendant Electrolux Home Products, Inc. American Family and the Van Engens (hereafter referred to collectively as American Family) brought this action against Electrolux.

### 2. Motion to Strike

Following a scheduling conference, the court in October 2023 set December 22, 2023, as the deadline for the parties to file any motions related to expert witnesses. On

that date Electrolux filed a motion to exclude the opinions of Michael Stoddard. (ECF No. 71.). (ECF No. 65.) Civil Local Rule 7(b) (E.D. Wis.) requires that "any memorandum and other papers in opposition must be filed within 21 days of service of the motion." Therefore, American Family's response was due no later than January 12, 2024.

January 12, 2024, was a Friday. American Family did not respond until the following Monday, January 15, 2024, which was Martin Luther King, Jr. Day. (ECF No. 79.) It did not seek leave to file an untimely response or acknowledge its tardiness. On January 18, 2024, Electrolux moved to strike American Family's response. (ECF No. 83.) That same day, American Family responded to the motion to strike (ECF No. 88) and filed a belated "Motion for Extension of Time to File Response to Electrolux's Motion to Exclude Certain Opinions of Michael Stoddard." (ECF No. 85.)

"Scheduling orders and court-imposed deadlines matter." *Bowman v. Korte*, 962 F.3d 995, 998 (7th Cir. 2020). "When an act may or must be done within a specified time, the court may, for good cause, extend the time … on motion made after the time has expired if the party failed to act because of excusable neglect." Fed. R. Civ. P. 6(b)(1).

The determination of whether neglect is excusable "is at bottom an equitable one, taking account of all relevant circumstances surrounding the party's omission." *Pioneer Inv. Servs. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 395 (1993). "To find 'excusable neglect,' courts should consider all relevant circumstances surrounding the party's

neglect, including the prejudice to the non-movant, length of delay, and reason for delay." *Korte*, 962 F.3d at 998 (citing *Pioneer*, 507 U.S. at 395); *see also Gravitt v. Mentor Worldwide LLC*, 342 F.R.D. 130, 133 (N.D. Ill. 2022) (quoting *Pioneer*, 507 U.S. at 395; citing *Raymond v. Ameritech Corp.*, 442 F.3d 600, 606 (7th Cir. 2006)).

But "[m]ost important is the reason for the delay." *Satkar Hosp., Inc. v. Fox TV Holdings*, 767 F.3d 701, 707 (7th Cir. 2014); *Hying v. Hodges*, No. 23-CV-1361-JPS, 2024 U.S. Dist. LEXIS 10631, at *4 (E.D. Wis. Jan. 22, 2024) ("These factors are not weighted equally: the reason for the delay is the most important factor.") (quoting *Postle v. Bath & Body Works, LLC*, No. 13CV50374, 2015 U.S. Dist. LEXIS 15372, at *7 (N.D. Ill. Feb. 9, 2015)). "To establish excusable neglect, the moving party must demonstrate genuine ambiguity or confusion about the scope or application of the rules or some other good reason for missing the deadline, in addition to whatever lack of prejudice and absence of delay he can show." *Satkar Hosp.*, 767 F.3d at 707; *see also Lewis v. Sch. Dist. # 70*, 523 F.3d 730, 740 (7th Cir. 2008) ("We have cautioned, however, that 'a simple case of miscalculation' of a deadline generally is 'not a sufficient reason to extend time.'" (quoting *Marquez v. Mineta*, 424 F.3d 539, 541 (7th Cir. 2005)). "[P]lain neglect is not 'excusable neglect.'" *Bowman*, 962 F.3d at 998.

American Family's attorney, Ronald Harmeyer, submitted a declaration wherein he states that he was working diligently on the response and his failure to timely respond was "a result of the volume of work needed to provide a complete response to

Electrolux's motion." (ECF No. 87, ¶ 4.) He was without the benefit of his staff for a material portion of the response period, as his office was closed on Christmas Day, December 29 (when New Year's Eve was observed), and New Year's Day, as well as six weekend days that fell within the response period. (*Id.*) He states that he did not receive Stoddard's declaration until January 15, 2024 (ECF No. 87, ¶ 6), and although he recognizes he could have sought an extension of time before the expiration of the deadline, he chose to "remain focused on completing the response as quickly as possible" (ECF No. 87, ¶ 7).

An attorney in Harmeyer's position would ordinarily be expected to take a few minutes to file a motion for an extension of time. Nonetheless, the unavailability of Stoddard's declaration constitutes good cause and Harmeyer's explanation that he devoted the period of delay preparing his response is sufficient to constitute excusable neglect. While these circumstances may be insufficient to merit an extension in many instances, they are sufficient here given that there is not even the slightest hint that Electrolux was prejudiced by the short delay.

The delay was minimal; the response was filed before the next business day. American Family's tardiness did not shorten Electrolux's time to reply because that clock did not start to run until American Family filed its response. *See* Civ. L.R. 7(c).

4

Given the trivial delay, Electrolux's motion to strike (ECF No. 83) is denied. American Family's motion for leave to file its untimely response (ECF No. 85) is granted.

### 3. Motions Regarding Experts

### 3.1. Applicable Law

The admissibility of expert opinions is governed by Fed. R. Evid. 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993). *Kirk v. Clark Equip. Co.*, 991 F.3d 865, 871 (7th Cir. 2021). Under Rule 702 the court acts as a gatekeeper to ensure that proffered expert testimony "is not only relevant, but reliable." *Id.* at 872 (quoting *Daubert*, 509 U.S. at 589). "In performing this role, the district court must engage in a three-step analysis, evaluating: '(1) the proffered expert's qualifications; (2) the reliability of the expert's methodology; and (3) the relevance of the expert's testimony.'" *Id.* (quoting *Gopalratnam v. Hewlett-Packard Co.*, 877 F.3d 771, 779 (7th Cir. 2017)).

The fact that an expert is qualified to give an opinion is not by itself a sufficient basis for admissibility. *Kirk*, 991 F.3d at 873. In assessing the reliability of an expert opinion, courts may consider the following non-exhaustive factors:

> (1) Whether the particular scientific theory can be (and has been) tested; (2) whether the theory has been subjected to peer review and publication; (3) the known or potential rate of error; (4) the existence and maintenance of standards controlling the technique's operation; and (5) whether the technique has achieved general acceptance in the relevant scientific or expert community.

Case 2:20-cv-01455-WED    Filed 04/22/24    Page 5 of 24    Document 92

*Id.* (quoting *Deputy v. Lehman Bros., Inc.*, 345 F.3d 494, 505 (7th Cir. 2003)) (internal brackets and quotation marks omitted); *see also Gopalratnam*, 877 F.3d at 779-80 (discussing additional factors outlined in the Notes of Advisory Committee on Rules to the 2000 Amendment of Rule 702).

Because there are many different kinds of experts and expertise, the test for reliability is flexible, and no one factor is dispositive. *Kirk*, 991 F.3d at 873; *Gopalratnam*, 877 F.3d at 780. Courts must be mindful that they are not assessing the correctness of the expert's opinion but merely the soundness of the expert's methods. *Daubert*, 509 U.S. at 595 ("The focus, of course, must be solely on principles and methodology, not on the conclusions that they generate."); *Kirk*, 991 F.3d at 873; *Kopplin v. Wis. Cent. Ltd.*, 914 F.3d 1099, 1104 (7th Cir. 2019) ("The focus is on the expert's methodology, not his ultimate conclusions."). "The soundness of the factual underpinnings of the expert's analysis and the correctness of the expert's conclusions based on that analysis are factual matters to be determined by the trier of fact, or where appropriate, on summary judgment." *Gopalratnam*, 877 F.3d at 781 (quoting *Smith v. Ford Motor Co.*, 215 F.3d 713, 718 (7th Cir. 2000); citing *Manpower, Inc. v. Ins. Co. of Pa.*, 732 F.3d 796, 806 (7th Cir. 2013)).

### 3.2. Michael Stoddard

Electrolux does not dispute that Michael Stoddard is generally qualified to testify as an expert in this action. He has examined about 1,000 dryer fires, roughly 80 percent of which involved Electrolux dryers. (ECF No. 73-3 at 166.) He has authored at least 150

6

expert reports (ECF No. 73-3 at 166) and has been a frequent expert witness for plaintiffs in their suits against Electrolux regarding fires in laundry dryers. *See, e.g., Donegal Mut. Ins. Co. v. Electrolux N. Am.*, No. 1:08-cv-2171, 2010 U.S. Dist. LEXIS 150144 (M.D. Pa. Dec. 22, 2010) (*Daubert* motion); *Donegal Mut. Ins. Co. v. Electrolux N. Am.*, No. 1:08-cv-2171, 2012 U.S. Dist. LEXIS 102573 (M.D. Pa. July 23, 2012) (reconsideration of *Daubert* motion); *Am. Family Mut. Ins. Co. v. Electrolux Home Prods.*, No. 11-cv-678-slc, 2014 U.S. Dist. LEXIS 86880 (W.D. Wis. June 25, 2014) (*Daubert* motion); *MemberSelect Ins. Co. v. Electrolux Home Prods.*, No. 13 C 4097, 2015 U.S. Dist. LEXIS 140685 (N.D. Ill. Sep. 3, 2015) (referring to Stoddard's opinions); *Allstate Ins. Co. v. Electrolux Home Prods.*, No. 16-cv-4161, 2017 U.S. Dist. LEXIS 189229 (N.D. Ill. Nov. 15, 2017) (motion to quash subpoena to Wright Group); *Allstate Ins. Co. v. Electrolux Home Prods.*, No. 16-CV-303G(Sr), 2018 U.S. Dist. LEXIS 63806 (W.D.N.Y. Apr. 16, 2018) (dispute regarding Stoddard's deposition fee); *Vitale v. Electrolux Home Prods.*, No. 15-cv-01815-RAL, 2018 U.S. Dist. LEXIS 136924 (E.D. Pa. Aug. 14, 2018) (*Daubert* motion); *see also State Farm Fire & Cas. Co. v. Electrolux Home Prods., Inc.*, No. 3:08-CV-436, 2012 U.S. Dist. LEXIS 188434, at *23 (N.D. Ind. Nov. 5, 2012) (discussing Stoddard as a co-author of an expert report); *State Farm Fire & Cas. Co. v. Electrolux Home Prods.*, No. 3:08-CV-436, 2013 U.S. Dist. LEXIS 84550 (N.D. Ind. June 17, 2013) (same); *Am. Family Mut. Ins. Co. v. C Electrolux Home Prods., Inc.*, No. 20-CV-1455, 2023 U.S. Dist. LEXIS 222389, at *1 (E.D. Wis. Dec. 8,

2023) ("Stoddard has been an expert in many cases like this one involving fires in Electrolux dryers.").

Stoddard submitted a 220-page report, the first roughly 209 of which were copied and pasted from his prior investigations of Electrolux dryers. (ECF No. 72 at 2.) He explains that his basic methodology was that set forth in National Fire Protection Association (NFPA) 921 – Guide for Fire and Explosion Investigations. (ECF No. 73-3 at 19.) NFPA 921 outlines the NFPA's systematic methodology for determining the cause and origin of fires. "The scientific method that NFPA 921 recommends for investigating the cause of a fire consists of the following seven steps: '(1) identify the problem; (2) define the problem; (3) collect data; (4) analyze the data; (5) develop a hypothesis; (6) test the hypothesis; and (7) following any repeated rounds of refining and testing the hypothesis, select the final conclusion.'" *State Farm*, 2012 U.S. Dist. LEXIS 188434, at *30 (quoting *United States v. Aman*, 748 F. Supp. 2d 531, 535 (E.D. Va. 2010)). This tested, peer-reviewed, and widely accepted methodology repeatedly has been found reliable for purposes of Fed. R. Evid. 702. *See Republic Servs. of Ind. Ltd. P'ship v. COE Heating & Air Conditioning, Inc.*, No. 1:21-cv-108-HAB-SLC, 2023 U.S. Dist. LEXIS 173972, at *13 (N.D. Ind. Sep. 27, 2023) (citing cases).

All laundry dryers function in the same way—hot air is blown over wet tumbling laundry. Laundering and tumbling fabrics will generate lint, and the combination of lint and heat—whether generated through a gas flame or an electric heating element—

creates the potential for fire. Therefore, separating lint from the heat source, minimizing other potential fuel sources, and ensuring that any fire can be contained within the dryer unit, are all central to principles of dryer safety.

Stoddard concluded that Electrolux's dryer design was defective because it failed in all three respects—separation, minimization, and containment. Nearly all dryers use a bulkhead design whereby the back of the dryer drum is open and the tubular drum rotates on rollers against the back of the unit. In this design the heating element is located at the bottom of the unit and the hot air travels up through a duct and enters the back of the dryer drum through a vent. The hot air passes through the drum where the laundry is tumbling, and then, after passing through a lint trap where much of the generated lint is collected to be cleaned by the user, is exhausted out of the unit.

Electrolux used a ball-hitch design where the back of the dryer drum is closed, and the drum rotates around a single central post that is attached to the back of the drum. Perforations through which hot air enters cover the entire back of the drum, giving it the appearance of a giant sieve, albeit without holes on the sides.

Electrolux's electric dryers had a circular heating element that was located behind the drum and was roughly the diameter of the drum. The burner in gas models was at the base of the unit.

Stoddard concluded that Electrolux's design was unsafe because it was unavoidable that lint would escape through the perforations on the back of the drum.

This lint would collect in the cabinet, on the wall behind the drum, and on the baffle behind the perforations of the drum and, over time, the accumulated lint could contact the heating elements, resulting in a fire. Users could not readily access the interior of the cabinet and clean out this lint.

Other than a fire from lint contacting the electric heating element or the gas burner, the lint could serve as fuel in the event of a short of the electric heating element. A short could result if a small piece of metal such as a bra underwire or a bobby pin slipped through a perforation in the drum and contacted the heating element. Or the ball-hitch could fail, which would cause the drum to spin irregularly and lead to metal contacting the heating element. Lint could also be ignited by malfunctions of the gas burner, including an unusually large flame, which may result from improper airflow in the dryer.

Rather than using metal or fire-resistant plastic components, Electrolux used plastic components that could provide a secondary fuel source for any fire. This included the door latch, which could melt in a fire and allow the fire to escape the unit.

Electrolux challenges Stoddard's opinions that the defects he identified in Electrolux dryers caused the three fires at issue. (ECF No. 72 at 5.) Stoddard did not test any of the three dryers but instead relied on testing performed by another of the plaintiffs' experts. (ECF No. 72 at 5.) Stoddard did not consider alternative explanations, including evidence that the users failed to comply with Electrolux's installation

instructions. (ECF No. 72 at 8-9.) His opinion that Electrolux's use of plastic components resulted in an extension of the fires was not the result of any reliable principle or methodology. (ECF No. 72 at 9.) He did not consider, for example, that in all three fires there is evidence that a user opened the door and left it open after seeing the fire. (ECF No. 72 at 9.)

Electrolux also argues that Stoddard is not qualified to offer an opinion regarding the sufficiency of Electrolux's warning labels or instructions. This is the domain of a human factors engineer and Stoddard is a safety engineer. (ECF No. 72 at 11-13.) Finally, to the extent that Stoddard may be opining that a manufacturing defect caused or contributed to any fire, the opinion should be excluded because it is based on speculation. (ECF No. 72 at 13-16.)

### 3.2.1.  Opinions as to the Cause of the Subject Fires

The overwhelming majority of Stoddard's report is devoted to his opinions regarding the existence of certain design defects in Electrolux's dryers that increased the risk of fire. Electrolux does not challenge these opinions other than to argue that it is somehow improper that Stoddard's research and testing predated his involvement in this case and have been presented in many other cases. But experts routinely proffer all sorts of recycled opinions. An opinion does not have to be formed specifically in response to the present case for it to be admissible. Stoddard is qualified to offer his opinions regarding general design defects in the subject Electrolux dryers, the opinions

are the product of a reliable methodology, and they are relevant. *See, generally, Vitale*, 2018 U.S. Dist. LEXIS 136924, at *20-*26.

But the fact that an appliance has a defect that increases the risk of fire does not mean that every fire related to that appliance is a result of the defect. Electrolux argues that Stoddard has not adequately supported his opinion that the three fires at issue were caused by any of the defects he identified. Stoddard offers only the barest discussion in his report of the three fires that form the basis for this lawsuit.[1] Likewise, in response to Electrolux's motion, American Family tends to discuss Stoddard's opinions regarding Electrolux's dryers in general and not with regard to the three fires at issue.

Stoddard states in his report that the Curtis fire resulted from lint that had accumulated in the dryer cabinet contacting the gas burner. (ECF No. 73-3 at 219.) The Flones fire occurred because accumulated lint contacted the electric heating coil. (ECF No. 73-3 at 219.) And the Van Engen fire resulted from movement of the drum assembly, which caused a short circuit and ignition of collected lint. (ECF No. 73-3 at 219.)

---

[1] Stoddard submitted a declaration in response to Electrolux's motion. (ECF No. 80.) Electrolux argues the court must disregard it because it is both an improper supplemental response brief and an improper supplemental report. (ECF No. 90 at 2-3.) An expert's declaration in response to a *Daubert* motion serves a limited purpose. Insofar as Stoddard attempts in his declaration to expand his opinions, state the basis and reasons for them, or state facts or data he considered in forming them, the declaration is disregarded. *See Leibfried v. Caterpillar, Inc.*, No. 20-CV-1874, 2023 U.S. Dist. LEXIS 106006, at *8-9 (E.D. Wis. June 20, 2023). Federal Rule Civil Procedures 26(a)(2)(B) requires that these details must be contained in his report. *Id*.

But as to each of these opinions Stoddard offers very little to explain the "reasons for them." *See* Fed. R. Civ. P. 26(a)(2)(B)(i). Rather than explaining why an identified defect caused a specific fire, Stoddard's report goes no further than stating that a defect *could* have caused a specific fire. As American Family notes in its own challenge to Electrolux's expert, the presence of a particular condition in a dryer that caught fire does not mean that the condition caused the fire. (ECF No. 75 at 15 (discussing Marzola's opinion that the fires were caused by a reduced diameter in the exhaust duct because he encountered other instances of fires in dryers with reduced diameter ducts).) Stoddard's opinion that the defects *could have* caused the fires is not relevant or helpful; a layperson, informed of the alleged defects in Electrolux dryers and how they increase the risk of fire, can conclude without expert assistance that the defects could have caused the fires at issue.

While an expert may be able to appropriately offer an opinion that a specific fire was caused by a particular defect, and although Stoddard identified particular defects that he believes led to each of the three fires at issue, he did not explain how he reached that conclusion. NFPA 921, Stoddard's stated methodology, uses a process of elimination to determine the cause of a fire. *See Ball Corp. v. Air Tech of Mich., Inc.*, No. 4:16-CV-42-TLS, 2022 U.S. Dist. LEXIS 98548, at *20 (N.D. Ind. June 2, 2022); *Liberty Mut. Fire Ins. Co. v. LG Elecs. USA, Inc.*, No. 10-C-520, 2012 U.S. Dist. LEXIS 161987, at *10 (E.D. Wis. Nov. 13, 2012); *see also Chapman v. State Farm Fire & Cas. Co.*, No. 5:15-cv-

14232, 2018 U.S. Dist. LEXIS 147944, at *3 (E.D. Mich. Aug. 30, 2018). But Stoddard did not articulate what alternative explanations he considered and ruled out before arriving at his conclusion regarding the cause of each of the three fires. (*Compare* ECF No. 73-3 at 216-20 (Stoddard's discussion of the subject fires) *with, e.g.*, ECF No. 76-2 at 6-7 (Marzola's report stating which alternative explanations were considered and ruled out).) This would be fine if there were no other plausible explanations for the fires, but Stoddard notes in his report that dryers may catch fire for reasons unrelated to the design elements that he says are unsafe. (ECF No. 73-3 at 163-66 (discussing fires in Whirlpool dryers); *see also* ECF No. 72 at 5-7 (discussing opinion of plaintiff's fire expert, William Keefe, that lint buildup may cause fires in bulkhead dryers).)

In fact, Stoddard has investigated dozens of fires that did not use the ball hitch design. (ECF No. 73-3 at 166.) He does not explain why or how dryers of other designs catch fire. Absent such an explanation, he has not shown that those or similar causes did not cause the fires at issue. This sort of evaluation of alternative causes is required under NFPA 921. By failing to show that Stoddard considered and appropriately discounted alternative explanations, American Family has failed to show that he reliably applied the methodology to arrive at his conclusions.

The closest Stoddard came to discussing potential alternative causes of the fires was in conjunction with his opinion that the dryers were installed properly. He stated:

> The clothes dryers were installed in a reasonable and foreseeable manner using the appropriate types of venting required by Electrolux's Installation

instructions, or at least commonly and foreseeably used venting materials sold for use in venting clothes dryers. There is no reliable evidence to prove that airflow within the dryer was improper because of the venting. While the arrangement and condition of the venting may have contributed to reduced airflow within the dryer in part, along with the defectively manufactured front drum seal in some cases and other potential contributing factors, this fire would not have occurred if the dryers had been manufactured using alternative designs.

(ECF No. 73-3 at 218-19.) But saying that the dryers were installed in a reasonable and foreseeable manner is different than saying that the installation of the dryers did not cause the fires. When Stoddard states that "this [sic] fire would not have occurred if the dryers had been manufactured using alternative designs," he does not explain why.

Stoddard may offer his opinions regarding defects he identified in the design of the Electrolux dryers at issue and how those alleged defects may lead to fires. However, he may not offer an opinion that any specific fire was, in fact, caused by any particular defect. American Family has not demonstrated that those opinions are the product of a reliable methodology.

### 3.2.2.   Opinions Regarding Plastic Components

Electrolux also argues that Stoddard's opinions regarding the use of plastics in the dryers should be excluded as irrelevant because there is no evidence that the fires extended beyond the dryers due to plastic components. (ECF No. 72 at 9-11.)

American Family's response does not discuss this argument. Thus, it has failed in its burden to show that Stoddard may offer an opinion that Electrolux's use of plastic damaged the plaintiffs.

If, however, American Family is able to present such evidence through other means (for example, through a fire expert who could testify that the plastic provided additional fuel that exacerbated smoke damage in the homes), then Stoddard's opinion that Electrolux's use of plastics constituted a defect is relevant. Stoddard's opinion in this regard is the product of a reliable methodology and one that Stoddard is qualified to offer. *See Vitale*, 2018 U.S. Dist. LEXIS 136924, at *24-27.

### 3.2.3.  Opinions Regarding Warning Labels and Instructions

Stoddard also offered opinions regarding Electrolux's warnings and instructions. Electrolux moves to exclude these opinions because they are beyond Stoddard's expertise.

Notwithstanding the fact that Stoddard testified at his deposition that he is a human factors expert when it comes to laundry dryers (ECF No. 90 at 4-5), American Family's response concedes that he lacks such expertise (ECF No. 79 at 8 ("The basis of Electrolux's argument is that Mr. Stoddard is not a human factors expert. This much is not in dispute, as Mr. Stoddard has never held himself out to be a human factors expert.")). American Family insists that Stoddard is offering his opinion only as a safety engineer.

The only opinion regarding Electrolux's warnings or instructions that American Family addresses is Stoddard's opinion that "Electrolux violated basic safety

engineering principles by choosing the least preferable method to warn users of the fire hazards ….” (ECF No. 73-3 at 218; *see also* 19 at 9-10.)

Whether it was appropriate for Electrolux to resort to a warning rather than eliminating a hazard is an opinion within the domain of a safety engineer. It is a relevant opinion that Stoddard is qualified to offer and is the product of a reliable methodology (*see* ECF No. 73-3 at 21-25). Therefore, regarding Electrolux’s warnings and instructions, Stoddard will be permitted to offer the opinion that Electrolux should have eliminated a hazard rather than merely warned against it. As this is the only opinion regarding Electrolux’s warnings or instructions that American Family’s response addresses, it is the only such opinion Stoddard will be permitted to offer.

American Family’s only other argument with respect to this aspect of Electrolux’s motion is that Stoddard can testify that Electrolux did not include certain warnings. Whether Electrolux included a warning is a fact question not subject to Rule 702.

### 3.2.4.  Manufacturing Defects

Electrolux argues that Stoddard should not be permitted to offer any opinion related to potential manufacturing defects—specifically, that a defective front drum seal may have affected airflow (ECF No. 72 at 13-15) or that screws may have become loose because of over or under tightening in the factory (ECF No. 72 at 15).

American Family's response does not address Electrolux's argument regarding screws. American Family having failed to sustain its burden regarding Stoddard's opinions regarding loose screws, all such opinions will be excluded.

As to the front drum seal, in his report Stoddard refers to the front drum seal having been "defectively manufactured" "in some cases." (ECF No. 73-3 at 218.) Electrolux argues that, because the seals were consumed in the fires, there is no factual or scientific basis for Stoddard to offer any opinion about the seals in the subject dryers. (ECF No. 72 at 14.)

In response, American Family states that it previously moved to reopen discovery regarding the front seal issue. (ECF No. 79 at 11.) Should the court find that Stoddard lacked a sufficient factual basis for his opinion regarding the front seal, it should allow American Family to pursue additional discovery on that issue. (ECF No. 79 at 11.)

American Family's previously rejected motion to reopen discovery is irrelevant to the sufficiency of Stoddard's opinions. Stoddard issued his report more than five months before American Family sought to reopen discovery. (ECF Nos. 52; 73-3.) Stoddard relied on service bulletins that Electrolux issued between 2000 and 2004. (ECF No. 73-3 at 50-51.) American Family could have timely sought any discovery relevant to the bases of Stoddard's opinions.

18

American Family's only other effort to defend Stoddard's opinions regarding the front drum seals is to state, "In his affidavit [sic], at §§66-77, Mr. Stoddard sets forth facts he relies on in forming his opinions relating to the role of the drum seal in the accumulation of lint in the dryer." (ECF No. 79 at 11.)

The citation provided is incorrect; paragraphs 68 through 79 of Stoddard's declaration relate to the dryer seals. (ECF No. 80.) In these paragraphs Stoddard largely goes beyond his report. Therefore, these new explanations are disregarded. Again, Rule 26(a)(2)(B)(i) requires that an expert's report contain "a *complete* statement of all opinions the witness will express and the basis and reasons for them" (emphasis added). The report must stand on its own; a party does not comply with Rule 26(a)(2)(B) if it is necessary cobble together a report, deposition testimony, and declarations to try to discern an expert's opinions and the basis and reasons for them. *See Ciomber v. Coop. Plus, Inc.*, 527 F.3d 635, 642 (7th Cir. 2008) ("Rule 26(a)(2) does not allow parties to cure deficient expert reports by supplementing them with later deposition testimony."); *Leibfried v. Caterpillar, Inc.*, No. 20-CV-1874, 2023 U.S. Dist. LEXIS 106006, at *8-9 (E.D. Wis. June 20, 2023) (noting that an expert cannot supplement his report through an affidavit submitted in response to a *Daubert* motion). Any supplement must comply with Rule 26(e)(2).

Without American Family directing the court to any specific portion of Stoddard's 220-page report in which he purports to provide a basis for his opinion

regarding the dryer seals, the court struggles to identify any such basis. The only reference to the drum seals in the portion of his report where he discusses the three fires at issue is the statement excerpted above: "While the arrangement and condition of the venting may have contributed to reduced airflow within the dryer in part, along with the defectively manufactured front drum seal in some cases and other potential contributing factors, this fire would not have occurred if the dryers had been manufactured using alternative designs." (ECF No. 73-3 at 218-19.)

An opinion that a defective front drum seal could have led to fires in *some* cases is irrelevant unless there is evidence that a defective front drum seal contributed to the fire in these three specific instances. Without evidence as to the rate at which the defect occurred, the fact Electrolux issued various service bulletins regarding the seals (ECF No. 73-3 at 49-54) does not support the inference that the three dryers at issue likely had the defect.

Thus, American Family has failed to sustain its burden to show that Stoddard may offer an opinion that a defective front drum seal contributed to any of the three fires. Stoddard may not offer such an opinion.

### 3.2.5. Conclusion as to Stoddard

Electrolux's motion to exclude the expert opinions of Stoddard will be granted in part and denied in part. Stoddard may offer his opinions regarding defects he identified in the design of the Electrolux dryers at issue and how those alleged defects may lead to

fires. Stoddard, however, may not offer an opinion that any specific fire was, in fact, caused by any particular defect. Nor may he offer the opinion that Electrolux's use of plastic components damaged the plaintiffs. Stoddard may offer his opinion that "Electrolux violated basic safety engineering principles by choosing the least preferable method to warn users of the fire hazards …" (ECF No. 73-3 at 218), but American Family has failed to sustain its burden as to any other opinion regarding Electrolux's warnings or instructions. Finally, Electrolux's motion will be granted with respect to Stoddard's opinions regarding manufacturing defects—specifically, the possibility that loose screws or a defective front dryer seal contributed to any of the fires.

### 3.3. Richard Marzola

Electrolux retained Richard Marzola to evaluate the cause of the fires. He prepared similar reports for each of the three fires. (ECF Nos. 76-2 (Flones); 76-3 (Curtis); 76-4 (Van Engen).) He concluded that each fire was caused by lint accumulating in the dryer. American Family does not challenge (and in fact agrees with) that aspect of Marzola's opinions. (ECF No. 75 at 3.)

But Marzola went further, opining that the lint accumulated in the dryers because each was improperly installed and maintained. (ECF Nos. 76-2 at 6.; 76-3 at 7; 76-4 at 6.) American Family argues that Marzola is not qualified to offer these opinions and the opinions are not the product of a reliable methodology. Specifically, it notes that

Marzola never tested whether the manner in which the three dryers were installed would decrease airflow below the minimum specified by Electrolux.

Instead, Marzola noted that Electrolux tested dryers installed according to its specifications and dryers subject to restricted airflow. "The test results revealed that the Electrolux dryer produced only negligible amounts of lint accumulation in the heater pan with a dryer installed in accordance with the Electrolux's Installation Instructions." (ECF No. 76-2 at 42.) Marzola does not describe the result of Electrolux's test when its dryers were subject to restricted airflow.

Marzola then noted that each of the three subject dryers was installed using a flexible foil exhaust duct, which is inconsistent with Electrolux's instructions. His reasoning appears to be as follows: Electrolux tested how its dryers accumulate lint when installed according to its specifications; when installed according to Electrolux's specifications, its dryers accumulated only negligible lint; the three subject dryers accumulated excessive lint; because the subject dryers accumulated excessive lint, they were not properly installed; the subject dryers used foil ducts; the use of foil ducts is contrary to Electrolux's specifications; therefore, the excessive lint accumulated because the dryers were installed using foil ducts.

American Family argues that the reason Electrolux specifies using rigid or flexible metal ducts is because foil ducts are at risk of becoming twisted, bent, or crushed, which may result in restricted airflow. Restricted airflow may lead to a buildup

of lint. But without testing—for example, by attaching a foil duct to a sample dryer in the same manner as the duct was attached to each of the subject dryers and measuring the air flow—Marzola cannot say that the ducts were a factor in the fires.

Marzola's attempt to connect the fires to the use of foil ducts is not the product of a reliable methodology. Simply because Electrolux's testing showed that only negligible lint accumulated in a properly installed dryer does not mean that excessive lint in a dryer is evidence the dryer was improperly installed. Marzola goes even further, concluding that a specific type of improper installation—the use of a foil duct—led to the excessive lint buildup in any of the three fires. The means by which Marzola arrived at this conclusion was neither scientific nor reliable. Therefore, the court will grant American Family's motion to exclude Marzola's opinion that each of the fires occurred because the dryers were installed with foil ducts.

In its initial brief American Family failed to develop an argument regarding any of Marzola's other opinions, including his opinions that the fires were the result of improper maintenance and that Electrolux's dryers were not defectively designed or manufactured. Although American Family addressed Marzola's opinions regarding maintenance in reply (ECF No. 82 at 7-9) after Electrolux noted in response that American Family had not challenged those opinions (ECF No. 77 at 12-13), arguments raised for the first time in reply are not properly before the court, *Griffin v. Bell*, 694 F.3d

817, 822 (7th Cir. 2012) ("arguments raised for the first time in a reply brief are deemed waived").

## 4. Conclusion

For the reasons set forth above:

**IT IS THEREFORE ORDERED** that Electrolux Home Products, Inc.'s "Motion to Exclude Certain Opinions of Michael Stoddard" (ECF No. 71) is **granted in part and denied in part** as set forth in this decision.

**IT IS FURTHER ORDERED** that American Family Mutual Insurance Company's "Motion to Exclude Testimony of Richard Marzola" (ECF No. 74) is **granted**. Marzola's opinion that any of the fires was caused by the use of a foil exhaust duct is excluded.

**IT IS FURTHER ORDERED** that Electrolux Home Products, Inc.'s "Civil L.R. 7(h) Expedited Non-Dispositive Motion to Strike" (ECF No. 83) is **denied**.

**IT IS FURTHER ORDERED** that American Family Mutual Insurance Company's "Motion for Extension of Time to File Response to Electrolux's Motion to Exclude Certain Opinions of Michael Stoddard" (ECF No. 85) is **granted**.

Dated at Milwaukee, Wisconsin this 22nd day of April, 2024.

WILLIAM E. DUFFIN
U.S. Magistrate Judge